**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JOAN ANGELI, et al.,** | : |
| | : |
| **Plaintiffs,** | : |
| **v.** | : **3:18-CV-703** |
| | : **(JUDGE MARIANI)** |
| **LIBERTY MUTUAL INSURANCE** | : |
| **COMPANY,** | : |
| | : |
| **Defendant.** | : |

## MEMORANDUM OPINION
## I. INTRODUCTION

Here the Court considers Defendant's Motion for Partial Summary Judgment (Doc.

53) with which Defendant Liberty Mutual Insurance Company ("Defendant") seeks judgment

in its favor on the bad faith claim contained in the Complaint filed on March 29, 2018, by

Plaintiffs Joan Angeli and Robert Angeli ("Plaintiffs") (Doc. 1 at 6). For the reasons

discussed below, the Court will deny Defendant's motion.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

This action arises out of an incident that occurred on August 16, 2017, in Wilkes-

Barre, Pennsylvania. (Doc. 54 ¶ 1; Doc, 61 ¶ 1.) On that date, a Chevrolet Monte Carlo

driven by Brett Lee contacted Plaintiff, Joan Angeli, as she was crossing South River Street,

---

[1] In many instances, the parties partially admit and/or qualify their responses. (*See* Docs. 54, 61, 66.) In the Statement of Undisputed Facts, the Court includes only those facts which are agreed upon. The parties provide citations to the record in support of their stated facts (*see id.*), but he Court does not include them in the recitation set out in the text.

and Mrs. Angeli sustained injuries as a result of this incident. (Doc. 54 ¶¶ 2, 3; Doc. 61 ¶¶ 2, 3.)

At the time of the accident, Mrs. Angeli was insured under LibertyGuard Auto Policy No. AOS-288-477221-40 7 2 (the "Policy"), which was issued by Defendant to named insureds Robert J. Angeli and Joan M. Angeli, providing certain coverages for the period January 10, 2017 to January 10, 2018. (Doc. 54 ¶ 4; Doc. 61 ¶ 4.) The Policy provided First Party (personal injury protection/"PIP") Benefits up to the amount of $10,000 for Medical Expenses and $25,000 for Income Loss, subject to the terms, conditions, limitations and exclusions of the Policy. (Doc. 54 ¶ 5; Doc. 61 ¶ 5.) The Policy also provided Underinsured Motorists ("UIM") Bodily Injury Coverage in the amount of $250,000 Each Person/$500,000 Each Accident, stacked by three vehicles for a total amount of $750,000 Each Person subject to the terms, conditions, limitations and exclusions of the Policy. (Doc. 54 ¶ 6; Doc. 61 ¶ 6.) The UIM Coverage applicable to the Policy provided, *inter alia*, as follows :

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily Injury":
>
> I . Sustained by an "insured", and
>
> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

(Doc. 54 ¶ 7; Doc. 61 ¶ 7.)

Mrs. Angeli made a claim for PIP Medical Expense Benefits under the Policy, and the applicable benefits of $10,000 were paid. (Doc. 54 ¶ 8; Doc. 61 ¶ 8.) She also made a claim for PIP Income Loss Benefits under the Policy. (Doc. 54 ¶ 9; Doc. 61 ¶ 9.)

Plaintiffs first reported the collision and their resulting claims to Liberty Mutual on the morning of Monday, August 21, 2017. (Doc. 61 ¶ 33; Doc. 66 ¶ 33.) A claim was established and assigned to Liberty Mutual Claim Representative (CR) Giana Pietrafesa on August 22, 2017. (Doc. 61 ¶ 34; Doc. 66 ¶ 34.) CR Pietrafesa first reviewed the claim on August 23, 2017, and attempted to call Joan Angeli. (Doc. 61 ¶ 35; Doc. 66 ¶ 35.) Due to the severity of the reported injuries, CR Pietrafesa transferred the file for reassignment. (Doc. 61 ¶ 36; Doc. 66 ¶ 36.)

In an early activity log entry, CR Pietrafesa noted that the insured sustained a "shattered right pelvis" and a "compound fracture below the right knee." (Doc. 61 ¶ 37; Doc. 66 ¶ 37.) Another early notation states "Insured not at fault." (Doc. 61 ¶ 75; Doc. 66 ¶ 75.) The context of the notation is not identified. (*Id.*)

The claim was transferred and reassigned to CR Ivy Williams who sent a letter dated August 23, 2017, to Plaintiffs' home introducing herself as the claim handler. (Doc. 61 ¶ 38; Doc. 66 ¶ 38.) CR Williams did not attempt to call Robert Angeli using his mobile number as was instructed upon initial reporting of Plaintiffs' claims. (Doc. 61 ¶ 39; Doc. 66 ¶ 39.)

CR Williams, the PIP adjuster on the claim, did not attempt to determine if Mr. Lee was insured, and, if so, the limits of his insurance policy. (Doc. 61 ¶ 41; Doc. 66 ¶ 41.)

On August 29, 2017, eight (8) days after the claim was reported, the claim activity log reflects that CR Williams received a call from Kate at the John Heinz Medical Center inquiring about the status of the claim. (Doc. 61 ¶ 42; Doc. 66 ¶ 42.) CR Williams wrote, "I advised Kate that the file is under review." (*Id*.) On September 26, 2017, Liberty Mutual received medical records from Heinz Rehabilitation Hospital outlining Mrs. Angeli's injuries, conditions, surgeries, and other treatment. (Doc. 61 ¶ 46; Doc. 66 ¶ 46.) The next claim file activity log entry following the August 29, 2017, entry is dated September 28, 2017, when CR Williams reviewed the known reported injuries and set the reserve for the policy limit of $10,000 for PIP Medical Expense Benefits, noting, " . . . the bills/treatment will exhaust the policy limits." (Doc. 61 ¶ 47; Doc. 66 ¶ 47.) In the first week of October 2017, more medical bills and records were received by Defendant relative to Mrs. Angeli's injuries and treatment and her need for future treatment. (Doc. 61 ¶ 48; Doc. 66 ¶ 48.)

With a payment to Geisinger Wyoming Valley Medical Center on October 2, 2017, the PIP Medical Expense benefits under the Policy were exhausted. (Doc. 61 ¶ 49; Doc. 66 ¶ 49.)

Mrs. Angeli initially made a claim for UIM benefits under the Policy with her attorney's letter to Defendant dated September 28, 2017. (Doc. 54 ¶ 10; Doc. 61 ¶ 10.) The letter was reviewed by CR Williams on October 5, 2017. Doc. 61 ¶ 54; Doc. 66 ¶ 54.)

Also on October 5, 2017, Plaintiff's PIP claim was closed. (Doc. 61 ¶ 50; Doc. 66 ¶ 50.) The claim was closed without Defendant conducting any substantive investigation into liability or the adequacy of Mr. Lee's coverage. (Doc. 61 ¶¶ 51, 52; Doc. 66 ¶¶ 51, 52.) Defendant did not open a UIM claim at the time. (Doc. 61 ¶ 55; Doc. 66 ¶ 55.)

On October 23, 2017, Liberty Mutual received a wage loss verification from Mrs. Angeli's employer documenting Mrs. Angeli's income and noting the fact that she had been unable to return to work since being struck by the car in August 2017. (Doc. 61 ¶ 56; Doc. 66 ¶ 56.)

A second letter relating to a claim for UIM benefits was sent by Mrs. Angeli's attorney to Defendant on December 5, 2017. (Doc. 54 ¶ 11; Doc. 61 ¶ 11.) Plaintiffs' counsel again requested Liberty Mutual send certain certified policy documents, and stated as follows in bold faced type:

**Note that this is our second request for this information, given the severity of Ms. Angeli's injuries, we ask that you respond as soon as possible. We are demanding the full limits of Ms. Angeli's UIM policy given that the third party coverage is only 15,000.**

(Doc. 61 ¶ 60; Doc. 66 ¶ 60.) On December 12, 2017, CR Williams made an internal request to have the requested documents produced. (Doc. 61 ¶ 61; Doc. 66 ¶ 61)

On January 9, 2018, Mr. Angeli called Liberty Mutual to inquire about why his wife's wage loss claim had not been paid since November of 2017. (Doc. 61 ¶ 62; Doc. 66 ¶ 62.) He explained that his wife remained off work. (*Id.*) CR Williams informed him that a note from Mrs. Angeli's treating doctor would be required prior to disbursing any additional

benefits. (*Id*.) Mr. Angeli also inquired about the name and contact information of the bodily injury adjuster assigned to the UIM portion of the claim. (*Id*.) CR Williams "...advised him that there is not one assigned to the file." (*Id*.) After receiving this call, CR Williams did not open a claim for UIM coverage or request that a UIM adjuster be assigned; she did not pay additional PIP Income Loss Benefits; she did not send any medical provider a disability form to be completed; she did not call any medical provider to obtain verbal documentation of the ongoing disability; she did not initiate any investigation regarding liability; and she did not inquire about the availability or adequacy of the alleged tortfeasor's liability insurance limits. (Doc. 61 ¶ 63; Doc. 66 ¶ 63.) Instead, the claim file reflects no activity. (*Id*.)

On February 20, 2018, Mr. Angeli called Liberty Mutual to discuss his wife's income loss payments and was routed to a Liberty Mutual claims center but did not speak with CR Williams. (Doc. 61 ¶ 64; Doc. 66 ¶ 64.) He told the Liberty Mutual representative that he had the documentation supporting the ongoing disability. (*Id*.) CR Williams did not return his call. (*Id*.)

On March 29, 2018, Plaintiffs filed the above-captioned action. (Doc. 61 ¶ 65; Doc. 66 ¶ 65.)

Following the February 20, 2018, entry, the next claim activity log entry is dated May 2, 2018, and reads "UIM." (Doc. 61 ¶ 66; Doc. 66 ¶ 66.) On May 3, 2018, a representative of Plaintiffs' counsel's firm called the Liberty Mutual Call Center and requested an adjuster's contact information. (Doc. 54 ¶ 12; Doc. 61 ¶ 12.) The recipient of the call provided the

needed information.  (*Id.*)  On May 3, 2018, the UIM claim was assigned to Claims Specialist Claire MacNabb.  (Doc. 54 ¶ 13; Doc. 61 ¶ 13.)  On that date, Ms. MacNabb began the investigation of the claim, including checking Insurance Services Office ("ISO") reports, contacting the claims representative for Safe Auto, Mr. Lee's insurer, and finding out about Safe Auto's disposition of Mrs. Angeli's claim against Mr. Lee.  (*Id.*)

On May 3, 2018, Ms. MacNabb received a call from a representative of Plaintiffs' counsel's office.  (Doc. 54 ¶ 14; Doc. 61 ¶ 14.)  This representative advised Ms. MacNabb that they had sent the Complaint via Certified Mail.  (*Id.*)  Ms. MacNabb explained that she had just received the Complaint and that it had been sent to counsel.  (*Id.*)  She noted in her claim file that the third party tortfeasor tendered the $15,000 limits of his Safe Auto policy and that Safe Auto accepted liability for the crash on the part of Mr. Lee on January 16, 2018.  (Doc. 61 ¶ 69; Doc. 66 ¶ 69.)

Ms. MacNabb received the police report relating to the accident and she called the two witnesses who were listed on that report.  (Doc. 54 ¶ 15; Doc. 61 ¶ 15.)  The calls to these witnesses were made on May 16, 2018.  (*Id.*)  Ms. MacNabb was unable to reach either witness that day.  (*Id.*)  Stefanie Weber's voice mailbox was full, but she was able to leave a message for Lori Overa.  (*Id.*)  On May 22, 2018, Ms. MacNabb called Ms. Overa again.  (Doc. 54 ¶ 16; Doc. 61 ¶ 16.)  She could not reach Ms. Overa, but she left a message for her. (*Id.*)  Ms. MacNabb also called Ms. Weber and attempted to retain a

recorded interview from her. (*Id.*) She was unable to obtain the recording that day, but she spoke to Ms. Weber the following day and obtained her recorded interview. (*Id.*)

On May 23, 2018, Ms. MacNabb received a message from Ms. Overa advising that she could not receive calls at work, but she left her telephone number for Ms. MacNabb. (Doc. 54 ¶ 17; Doc. 61 ¶ 17.) On May 23, 2018, Ms. MacNabb also called Mr. Lee, the operator of the vehicle involved in the accident. (Doc. 54 ¶ 18; Doc. 61 ¶ 18.) On May 24, 2018, Ms. MacNabb called Mr. Lee again, but she was unable to reach him. (Doc. 54 ¶ 19; Doc. 61 ¶ 19.) She left a message for him and sent him a letter. (*Id.*)

On June 18, 2018, Ms. MacNabb received a medical report sent by Plaintiffs' counsel. (Doc. 54 ¶ 20; Doc. 61 ¶ 20.) This report indicated that Ms. Angeli was 62 years old, and she was an instructor at the YMCA. (*Id.*) The report indicated that the car that hit her was going approximately 35 m.p.h. and that Mrs. Angeli was thrown approximately 50 feet. (*Id.*)

During June of 2018, images of the site of the accident were obtained. (Doc. 54 ¶ 21; Doc. 61 ¶ 21.) The recorded statement of Lori Overa was taken by a representative of Crawford, an independent investigator, on June 25, 2018. (Doc. 54 ¶ 22; Doc. 61 ¶ 22.)

On September 11, 2018, Ms. MacNabb called the third-party carrier in a further attempt to reach Mr. Lee. (Doc. 54 ¶ 23; Doc. 61 ¶ 23.) She also attempted to call Mr. Lee again, but she was unable to reach him and left him another message. (*Id.*)

On November 2, 2018, the depositions of Joan Angeli and Robert Angeli were taken. (Doc. 54 ¶ 24; Doc. 61 ¶ 24.) The deposition of Clare MacNabb was also taken on November 2, 2018. (Doc. 54 ¶ 25; Doc. 61 ¶ 25.) On December 4, 2018, the deposition of Brett Lee was taken. (Doc. 54 ¶ 26; Doc. 61 ¶ 26.) On December 13, 2018, the deposition of Stefanie Weber was taken. (Doc. 54 ¶ 27; Doc. 61 ¶ 27.) Defendant attempted to take the deposition of Lori Overa, but she would not accept service of a subpoena, and her deposition was not taken. (Doc. 54 ¶ 28; Doc. 61 ¶ 28.) On December 13, 2018, the deposition of Officer Steven Freeman, a patrolman with the Wilkes-Barre Police Department, was taken. (Doc. 54 ¶ 29; Doc. 61 ¶ 29.)

Defendant obtained a supplemental Police Report in early 2019. (Doc. 61 ¶ 72; Doc. 66 ¶ 72.) The report identified two additional eye witnesses to the accident: Donald Cron and Mark Maslowski. (*Id.*) Defendant has not interviewed these witnesses.[2] (Doc. 61 ¶ 73; Doc. 66 ¶ 73.)

Steven Schorr, now deceased, was engaged as an expert witness to perform a reconstruction of this accident, and he issued a report dated February 15, 2019. (Doc. 54 ¶ 30; Doc. 61 ¶ 30.)

No payment has been offered to Plaintiffs for UIM benefits. (Doc. 61 ¶ 76; Doc. 66 ¶ 76.) The parties attended a mediation and no settlement offer was extended. (Doc. 61 ¶

---

[2] As a result of the Court's Memorandum Opinion and Order addressing Plaintiffs' Motion for Leave of Court to File Amended Complaint Pursuant to F.R.C.P. 15(a)(2) (Doc. 59), the Court has reopened discovery to allow Defendant an opportunity to depose Mr. Cron and Mr. Maslowski. (*See* Doc. 68 at 9; Doc. 69 ¶ 2.)

86; Doc. 66 ¶ 86.)  Defendant had not denied coverage of the claim at the time Defendant filed the pending motion.  (Doc.61 ¶ 87; Doc. 66 ¶ 87.)

Plaintiffs engaged the services of Stuart J. Setcavage, AIC, CCLA, an expert in insurance industry claim handling standards and practice.  (Doc. 61 ¶ 88; Doc. 66 ¶ 88.) Mr. Setcavage issued a report in which he states that "the claim handling demonstrated by Liberty Mutual falls well below minimum industry standards . . . and is indicia of a reckless disregard for the rights and interest of its insured Joan Angeli."  (Doc. 61 ¶ 89; Doc. 66 ¶ 89.)  Mr. Setcavage's report provides further conclusions regarding Defendant's claim practices.  (Doc. 61 ¶ 90; Doc. 66 ¶ 90.)

The Police Report generated on August 22, 2017, lists Mr. Lee's speed as "999" which means that his speed was undetermined.  (Doc. 61 ¶ 81; Doc. 66 ¶ 81.)

### III. STANDARD OF REVIEW

Summary judgment "is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008).  "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  Thus, through summary adjudication, the court may dispose of

those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## IV. ANALYSIS

With the pending motion, Defendant contests only Plaintiffs' claim for bad faith, asserting that both the PIP and UIM claims have been properly handled. (Doc. 58 at 15-23.) Plaintiffs respond that their Complaint sets out numerous specific reasons why

Defendant's actions or inactions in handling Plaintiffs' UIM claim constitute bad faith under

42 Pa. C.S.A. § 8371.   (Doc. 63 at 21.)

The Pennsylvania legislature has created a statutory remedy for an insurer's bad

faith conduct, which reads as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>> (2) Award punitive damages against the insurer.
>> (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.

"The standard for bad faith claims under § 8371 is set forth in *Terletsky v. Prudential*

*Property & Cas. Ins. Co.*, 437 Pa. Super. 108, 649 A.2d 680, 688 (1994), *appeal denied*,

540 Pa. 641, 659 A.2d 560 (1995)." *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230,

233 (3d Cir. 1997). *Terletsky* defined the term "bad faith" as follows:

> In the insurance context, the term bad faith has acquired a particular meaning:
>
>> *Insurance.* "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky*, 649 A.2d at 688 (quoting Black's Law Dictionary 139 (6th ed. 1990)).  "[T]o

recover under a claim of bad faith, the plaintiff must show that the defendant did not have a

reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Id.* "In a bad faith case, summary judgment is appropriate when there is no clear and convincing evidence that the insurer's conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999). As stated by a panel of the Court of Appeals for the Third Circuit,

> [b]ad faith must be demonstrated by clear and convincing evidence, even on summary judgment. *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 523 (3d Cir. 2012). "A reasonable basis is all that is required to defeat a claim of bad faith." *Id.* (citation omitted). Moreover, "mere negligence or bad judgment does not constitute bad faith; knowledge or reckless disregard of a lack of a basis for denial of coverage is necessary." *Id.* (citation omitted).

*Bodnar v. Nationwide Mut. Ins. Co.*, 660 F. App'x 165, 167 (3d Cir. 2016).

*Post* explained that "an insurer does not act in bad faith by investigating and litigating legitimate issues of coverage." 691 F.3d at 523 (citation omitted). Further, "[e]ven questionable conduct giving the appearance of bad faith is not sufficient to establish it so long as the insurer had a reasonable basis to deny coverage." *Id. Post* cited *O'Donnell v. Allstate Ins. Co.,* 734 A.2d 901, 906–10 (Pa. Super. Ct.1999), for the proposition that "bad faith 'may also extend to the insurer's investigative practices' [but] in the absence of evidence of a dishonest purpose or ill will, it is not bad faith for an insurer to take a stand with a reasonable basis or to 'aggressively investigate and protect its interests.'" 691 F.3d at 523. In *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, the Pennsylvania Superior Court

confirmed that investigation practices and related conduct could support an insured's claim

for bad faith:

> [b]ad faith conduct also includes "lack of good faith investigation into facts, and failure to communicate with the claimant." *Romano v. Nationwide Mut. Fire Ins. Co.,* 435 Pa. Super. 545, 646 A.2d [1228, 1232 (1994)]; *see also, Birth Center* [*v. The St. Paul Cos., Inc.*, 787 A.2d 376, 378 (Pa. 2001)] (upholding a finding of bad faith where the insurer intransigently refused to settle a claim that could have been settled within policy limits, where the insurer lacked a bona fide belief that it had a good possibility of winning at trial, thus resulting in a large damage award at trial); *O'Donnell,* 734 A.2d at 906 (bad faith "may also extend to the insurer's investigative practices").

*Id.* at 1142-43.

In *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747 (3d Cir. 1994), the Court of

Appeals for the Third Circuit stated that "mere negligence on the part of the insurer is

insufficient to constitute bad faith; recklessness, however, can support a finding of bad

faith." *Id.* at 751. Reckless behavior can include "acts done with a bad motive or with a

reckless indifference to the interests of others." *Id.* An insurer's delay in responding to an

insured's communications, poor response time in engaging an investigator, and poor

response time in conducting an investigation are relevant considerations when determining

whether an insurer acted in bad faith. *Id.* at 752. As *Polselli* noted, such behavior may

suggest that the insurer "did not 'accord the interest of its insured the same faithful

consideration it gives its own interest.'" *Id.* (quoting *Cowden v. Aetna Casualty and Surety

Co.*, 134 A.2d 223, 229 (Pa. 1957)).

Regarding refusal to settle, "when an insurer breaches its insurance contract by a bad faith refusal to settle a case, it is appropriate to require it to pay other damages that it knew or should have known the insured would incur because of the bad faith conduct." *Birth Center*, 787 A.2d at 839. Further, "using litigation in a bad faith effort to evade a duty owed under a policy would be actionable under Section 8371." *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 313 (3d Cir. 2003).

*Post* also elaborated on the requisite "clear and convincing" evidence standard:

> Bad faith "must be proven by clear and convincing evidence and not merely insinuated." *Terletsky,* 649 A.2d at 688. This heightened standard requires evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *Bostick v. ITT Hartford Grp.,* 56 F. Supp. 2d 580, 587 (E.D. Pa.1999) (citations omitted). "Thus, the plaintiff's burden in opposing a summary judgment motion is commensurately high in light of the substantive evidentiary burden at trial." *J.C. Penney Life Ins. Co. v. Pelosi*, 393 F.3d [356, 367 (3d Cir. 2004)]. "In a bad faith case, summary judgment [in favor of the insurer] is appropriate when there is no clear and convincing evidence that [its] conduct was unreasonable and that it knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Bostick,* 56 F. Supp. 2d at 587.

691 F.3d at 523.

The Court's analysis focuses on Plaintiffs' UIM claim as Plaintiffs do not assert bad faith related to the PIP claim. (*See* Doc. 63 at 20-25.) The briefing of the pending motion indicates that there are two aspects to consideration of bad faith in this case: Defendant's delay in opening the UIM claim and Defendant's later refusal to pay UIM benefits. (*See* Docs. 58, 63, 65.) The Court will address each in turn.

## A. <u>Delay in Opening UIM Claim</u>

Plaintiffs' bad faith claim was initially grounded in Defendant's claim handling and investigating conduct which occurred before March 29, 2018, the date Plaintiffs filed their Complaint. (Doc. 1 ¶¶ 28-32.) At that time, Defendant had done nothing regarding a UIM claim, allegedly based on the failure of the PIP department to forward the claim to a Bodily Injury Claims Specialist, causing a delay which Defendant characterizes as "unintentional." (Doc. 58 at 19.) Defendant generally asserts that the record shows it properly handled the UIM claim but acknowledges that Plaintiffs' counsel's September 28, 2017, letter put it on notice of a potential UIM claim and its procedure "is that a UIM claim would ordinarily be opened upon receipt of such a letter" but in this case that did not happen: the "letter was received by the PIP Department, . . . and it was not forwarded to a Bodily Injury Claims Specialist." (Doc. 58 at 18.) Defendant further acknowledges that the same thing happened with Plaintiffs' counsel's December 5, 2017, letter. (*Id.*) Despite the delays, Defendant concludes that the delay "had no impact upon the investigation of this UIM claim" because Ms. MacNabb immediately began to investigate the claim when she received it on May 3, 2018. (Doc. 58 at 19.)

Defendant cites district court decisions within the Third Circuit in support of the proposition that such conduct may constitute negligence but it is not bad faith. (*Id.* at 19 (citing *Smith v. LM General Ins. Co.*, Civ. A. No. 17-02310, 2018 WL 1172542 (E.D. Pa. Mar. 6, 2018) (demand letter which got "lost in the shuffle for a little over three months" did

not demonstrate bad faith); *El Bor Corp. v. Fireman's Fund Ins. Co.*, 787 F. Supp. 2d 341, 349-50 (E.D. Pa. 2011) (no evidence that delay was knowing or reckless where the plaintiff's claim "fell through the cracks")).)

Plaintiffs distinguish *Smith* on the basis that the defendant insurance company's delay was three months and plaintiff's counsel had sent one letter addressed to a specific individual who was no longer working there where here there was a much longer delay and Plaintiffs' counsel communicated with Defendant on more than one occasion. (Doc. 63 at 23.) Plaintiff maintains these facts are more than sufficient to find that the instant delay was "knowing or reckless." (*Id.* (citing Doc. 61 ¶¶ 54-65).)

Defendant asserts that the facts upon which Plaintiffs rely "establish nothing more than a delay . . . which does not on its own establish bad faith." (Doc. 65 at 13.) Defendant quotes *Ridolfi v. State Farm Mut. Auto Ins. Co.* for the proposition that "'[a]n inference of bad faith only arises when time passes as part of a pattern of knowing or reckless delay in processing a meritorious claim.'" (*Id.* (quoting *Ridolfi*, Civ. A. No. 1:15-CV-859, 2017 WL 1316183, at *7 (M.D. Pa. Apr. 10, 2017)).) Defendant then concludes that

> Plaintiffs have not shown any pattern or practice on the part of Defendant to delay the processing of Plaintiffs' UIM claim. . . . . It is clear, based on the record evidence, that Defendant's delay amounted to nothing more than simple negligence, and in no way constitutes bad faith conduct.

(Doc. 65 at 13.)

After carefully considering the parties' arguments and the evidence upon which they rely, the Court finds that it cannot determine as a matter of law that Defendant's conduct

18

amounted to nothing more than simple negligence.  With its conclusory argument,

Defendant has not shown it is entitled to summary judgment on Plaintiffs' bad faith claim

because it has not shown that a reasonable jury would not be able to find that the

undisputed facts upon which Plaintiffs rely show by clear and convincing evidence that

Defendant acted knowingly or recklessly in its delay of opening a UIM claim.

Several material facts cited by Plaintiffs in support of their claim of knowing and/or

reckless behavior (Doc. 61 ¶¶ 54-65) show that there was an undisputed delay in

responding to Plaintiffs' communications.  Each of the cited paragraphs is at least admitted

in part by Defendant, and Defendant does not dispute the material facts considered below.

(*See* Doc. 66 ¶¶ 54-65.)

First, Plaintiffs' counsel received no response to his letter of September 28, 2017,

and Defendant took no action as a result of the letter.  (Doc. 61 ¶¶ 54, 55; Doc. 66 ¶¶ 54,

55.)  Importantly, Defendant acknowledges that it received the letter and the letter ordinarily

would have been the trigger for opening a UIM claim.  (*Id.*; Doc. 58 at 18.)

Second, Plaintiffs' counsel sent Defendant a letter dated December 5, 2017, which

reiterated the request made in the September 28, 2017, letter for certain documents and

also demanded the full limits of the Policy's UIM coverage.  (Doc. 61 ¶ 60; Doc. 66 ¶ 60.)

Plaintiffs' counsel received no response to the letter although Defendant's adjuster made an

internal request for production of the documents sought by Plaintiffs' counsel.  (Doc. 61 ¶¶

60, 61; Doc. 63 at 21; Doc. 66 ¶¶ 60, 61.)  No UIM claim was opened as a result of Plaintiffs' counsel's December 5, 2017, letter.

Third, during a January 9, 2018, phone conversation with Defendant's adjuster, Mr. Angeli inquired about the name and contact information of the bodily injury adjuster assigned to the UIM portion of the claim and the adjuster advised him that "there is not one assigned to the file." (Doc. 61 ¶ 62; Doc. 66 ¶ 62.)  After receiving the call, Defendant did not open a UIM claim.  (Doc. 61 ¶ 63; Doc. 66 ¶ 63.)

Fourth, the next activity documented in the claim log was on February 20, 2018, and had nothing to do with a UIM claim. (Doc. 61 ¶ 64; Doc. 66 ¶ 64.)  Plaintiffs filed suit on March 29, 2018, with no further documented action having been taken on their UIM claim. (Doc. 61 ¶ 65, 66; Doc. 66 ¶ 65, 66.)

While Defendant seeks to characterize its conduct as "simple negligence," the Court cannot agree with its assessment as a matter of law given the guidance set out in *Polselli*, 23 F.3d at 751, 752.  The Third Circuit Court of Appeals specifically stated that reckless behavior can form the basis of a bad faith claim, reckless behavior can include "acts done with a . . . a reckless indifference to the interests of others," *id.* at 751, and such behavior may be indicated by an insurer's delay in responding to an insured's communications, and poor response time in engaging an investigator and conducting an investigation, *id.* at 752. Here Defendant repeatedly failed to respond to communications from Plaintiffs and their counsel and, despite, notice of a UIM claim, it did not open such a claim for over seven

months from the time it acknowledges it ordinarily would have done so. (Doc. 58 at 18.) Defendants repeated failure to open a UIM claim despite numerous inquiries may, as Defendant asserts, have been "unintentional," (*id.* at 19), but its inaction also may support a finding that it knowingly failed to open a UIM claim when it should have and/or it "did not 'accord the interest of its insured the same faithful consideration it gives its own interest,'" *Polcelli*, 23 F.3d at 752.

On this record, Defendant has not satisfied its burden of showing that there is an insufficient "evidentiary basis on which a reasonable jury could find for the non-moving party." *Kaucher*, 455 F.3d at 423. In other words, the Court cannot conclude as a matter of law that a reasonable jury could not find by clear and convincing evidence that, in the circumstances presented here, Defendant did not act knowingly and/or recklessly when it did not open a UIM claim until May 2018 when such a claim ordinarily would have been opened upon receipt of Plaintiffs' counsel's September 28, 2017, letter. Therefore, Defendant's Motion for Partial Summary Judgment (Doc. 53) is appropriately denied.

## B. *Investigation* and *Liability* Determinations

Defendant avers that Ms. MacNabb immediately began to investigate the claim when she received it on May 3, 2018. (Doc. 58 at 19.) Defendant asserts that Ms. MacNabb testified at her November 2, 2018, deposition that she had not made a final decision in the case, she had not assigned a final percentage of liability to Mrs. Angeli, and the company wanted to further investigate the matter. (*Id.* at 20.) However, based on all of its

investigation and the accident reconstruction analysis of Steven Schorr, Defendant later

concluded that Mrs. Angeli was more than 51% at-fault in causing the accident. (*Id.* at 20-

21.)

Regarding Defendant's conclusion that Mrs. Angeli was more that 51% responsible

for the collision, Plaintiffs assert that the determination is not fair and reasonable based on

all of the available facts. (Doc. 63 at 23.) More specifically, Plaintiffs aver that Defendant

> consciously chose to completely ignore any and all information, documentation,
> or opinion (professional or otherwise) that is potentially favorable to its insured.
> Almost every eyewitness confirms Mr. Lee was speeding. However, Liberty
> Mutual has chosen to ignore the eyewitness accounts of Mr. Cron, Mr.
> Maslowski, Ms. Weber, and Plaintiffs' expert, Mr. Hudak. Moreover, Defendant
> has chosen to ignore all of the physical and circumstantial evidence from which
> Mr. Lee's excessive speed can be inferred (i.e. his airbag deployed, Mrs. Angeli
> was thrown forward into the air upon initial contact and came down and was
> struck a second time with enough force to shatter the windshield, she was hit
> so hard that both of her shoes and both of her socks were knocked off her feet,
> and her injuries were severe and potentially life-threatening).

(Doc. 63 at 23-24.)

Having concluded that Plaintiffs' bad faith claim goes forward, the Court need not

make findings regarding Defendant's conduct in the post May 2018 time period. Thus, with

the denial of Defendant's pending motion, the Court expresses no opinion about bad faith

related to Defendant's investigation of the UIM claim and its findings regarding liability.

## V. CONCLUSION

For the reasons discussed above, Defendant's Motion for Partial Summary

Judgment (Doc. 53) will be **DENIED**. An appropriate Order is filed simultaneously with this

Memorandum Opinion.

Robert D. Mariani
United States District Judge